UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHLOE BURNS, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 23-cv-086-JJM-PAS |
| ) | |
| BROWN UNIVERSITY, ) | |
|     Defendant. ) | |

ORDER

Plaintiff Chloe Burns sued Brown University, alleging violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-88, and state law rooted in her experiences with Brown's Title IX Office. While Ms. Burns' alleged claims based on Brown's conduct dates to her initial Title IX complaint in 2017, the Court has ruled that, due to the statute of limitations, this case is limited to whether Brown's post-August 6, 2018 conduct was retaliatory (Count I) and caused an intentional infliction of emotional distress ("IIED") (Count II). Specifically, Ms. Burns' claim is based on her allegations that Brown gave preferential treatment to her assailant and punished her for truthfully reporting her assault. The preferential treatment was in the form of an allegedly deficient investigation and resulted in Brown reprimanding her. After motion practice reduced Ms. Burns' case to the remaining two claims, and discovery is completed, Brown moves for summary judgment. ECF No. 26.

I.  BACKGROUND

Any events in this case occurring before August 6, 2018 are not actionable but the Court recounts them as background.  Ms. Burns filed a Title IX complaint in May 2017 during her freshman year against John Doe, a fellow Brown student, alleging that he sexually assaulted her on Brown's campus.  Mr. Doe responded to the complaint, denying the allegations, and setting forth his version of events.  He also filed a cross-complaint, accusing Ms. Burns of sexual assault, allegations that she also denied.  Brown hired an external investigator who investigated the complaints, conducted interviews, and undertook proceedings in accordance with Brown's policies.

Brown's Title IX Council held hearings at the end of October and issued a decision determining that Mr. Doe engaged in unwanted sexual touching and recommended suspension.  The hearing panel found that Ms. Burns was not responsible for the sexual assault charges in Mr. Doe's complaint.  Mr. Doe appealed that decision, and Brown allowed him to remain on campus subject to a no-contact order during the pendency of that appeal because it determined that he did not pose a significant safety risk.

Meanwhile, during the investigation process, Mr. Doe was selected to speak at his mid-year graduation ceremony.  Ms. Burns raised an objection in light of the hearing panel's disposition of her complaint.  Brown, however, did not revoke the invitation to speak, finding that Mr. Doe had the right to participate in University activities while his appeal was ongoing.  Frustrated because she believed that Mr.

Doe was getting a pass from Brown despite the panel's determination of his responsibility, Ms. Burns and a friend contacted a reporter at *The Tab*.[1] In her conversations, Ms. Doe disclosed Mr. Doe's identity, provided copies of the hearing panel's decisions, and her emails with Brown administrators. Ms. Burns ensured that her identity would be concealed.

*The Tab* article stated that Mr. Doe had been found responsible for sexual assault without mentioning the pending appeal. It also stated that the victim did not speak to the reporter and that someone from Brown leaked the information to hide Ms. Burns' involvement in the article. After the article was published, Mr. Doe received online threats and later withdrew from speaking at his graduation. Mr. Doe filed a Title IX complaint against Ms. Burns in December 2017 alleging that she retaliated against him when she disclosed his identity to the media and the hearing panel's findings in Ms. Burns' Title IX case while his appeal was pending.

Mr. Doe's appeal worked its way through the process. A panel determined that the record was insufficient to find that Mr. Doe knew or should have known that Ms. Burns was incapacitated and that he could not be held responsible, overturning the earlier decision. The panel also affirmed Ms. Burns' lack of responsibility as to Mr. Doe's cross-complaint.

Mr. Doe's retaliation complaint relating to *The Tab* article remained. Brown hired an external investigator to work the case. Ms. Burns responded to the

---

[1] *The Tab* is an online publication that bills itself as "a media brand covering youth culture and entertainment, with a global audience of millions." https://thetab.com/who-we-are.

complaint by letter–and asked to file a cross-complaint against Mr. Doe. Ms. Rene Davis from the Title IX office told her that because Mr. Doe had graduated and was no longer under Brown's purview, she could not file a complaint against him. The investigator interviewed seven witnesses and reviewed documents. She issued a report on August 6, 2018, finding that Ms. Burns had the right to tell her story about her encounter with Mr. Doe but that her conduct went beyond that–it found that the "rush to publish the article before [the mid-year graduation] ceremony, potential influence on [John's] choice to appeal the finding of the initial process, and the conflation of [John's] roles in the Title IX process and his selection as a ceremony speaker ma[de] the published article retaliatory" in violation of Brown's Title IX Policy's prohibitions against retaliation. ECF No. 28-10 at 4-5. The panel determined that a written reprimand of Ms. Burns was the proper resolution of the case. *Id.* at 5. The written reprimand would not appear on her transcript. ECF No. 28-24 at 2. Ms. Burns did not appeal the decision, and the case was closed. ECF No. 28-3 at 16-17.

Ms. Burns was originally part of a proposed class action along with other Brown students and the Court ruled that her claims going back to her original Title IX complaint were time-barred. She filed a solo complaint on August 6, 2021. Brown moved to dismiss Ms. Burns' complaint on statute of limitations grounds as she sought to pursue claims against Brown emanating from its investigation of her 2016 sexual assault allegations. The Court denied Brown's motion to dismiss, allowing Ms. Burns' "retaliation and intentional infliction of emotional distress claims

4

originating from Brown's August 6, 2018 adverse decision" to reprimand her. Text Order, June 26, 2023. In allowing the reprimand-as-retaliation case to proceed, the Court acknowledged that "many facts alleged in her complaint pre-date the August 6, 2018 cut off," "Brown's conduct pre-dating the limitations period is not independently actionable but provide a framework for Ms. Burns' retaliation and intentional infliction of emotional distress claims and may be admissible as evidence to prove the elements of those claims emanating from the August 6, 2018 decision." *Id.*

Now Brown moves for summary judgment. ECF No. 26.

## II.  STANDARD OF REVIEW

A party is entitled to summary judgment if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A party can show a genuine dispute by citing to materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials," or by showing that the materials cited either do not establish a genuine dispute or are not supported by admissible evidence. *Id.* Summary judgment is mandated against a party who, given adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case ... on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A complete failure of proof of an essential element shows that there is "no genuine issue as to any material fact" because if one element fails, all other facts are rendered irrelevant; it entitles the

moving party to "judgment as a matter of law" because, by definition, the nonmoving party cannot carry their burden at trial. *Id.* at 323.

## III. DISCUSSION

In opposing Brown's motion, Ms. Burns relies on many time-barred acts to raise disputed issues of fact and argues that the continuing violations doctrine permits the Court to consider those acts because they are anchoring conduct for the reprimand. While the Court considered, and rejected, the continuing violations doctrine at the motion to dismiss stage, it will consider Ms. Burns' arguments in the context of Brown's motion for summary judgment.

### A.   Continuing Violations Doctrine

Typically applied to hostile work environment claims where a plaintiff might experience a longer pattern of discrimination before she realizes each individual act from the beginning is discriminatory, the continuing violations doctrine is "an equitable exception that allows ... damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims." *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 144 (1st Cir. 2012) (quoting *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001)). This doctrine "applies only to claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim." *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015).

The Court has ruled that the only actionable event is the hearing panel's decision to reprimand Ms. Burns after she retaliated against Mr. Doe in a way that violated Brown's Title IX Policy.  Ms. Burns argues that, if not for her original Title IX complaint, no retaliation in the form of a reprimand would have occurred.  She argues that, going back to her initial complaint in 2017, Brown favored Mr. Doe, providing him with advantages that she did not have.[2]  Her perception of favoritism, however, does not justify application of the continuing violations doctrine.

The reprimand is not anchoring conduct such that the Court can consider time-barred acts going back to 2017.  Brown did not reprimand Ms. Burns because she filed her 2017 complaint against Mr. Doe; it reprimanded her because a hearing panel, after thoroughly investigating Mr. Doe's complaint, taking evidence, and interviewing witnesses, determined that she violated Brown's Title IX Policy by

---

[2] Some examples when Ms. Burns argues that Brown favored Mr. Doe are: allowing Mr. Doe to file a cross-claim after she filed her complaint; allowing Mr. Doe's private investigator to intimidate Ms. Burns' witnesses in the weeks leading up to the hearing on her formal complaint and refusing to hear her retaliation complaint related to witness tampering; failing to provide her updates on the investigation despite her repeated requests; allowing him to remain on campus after the finding that he engaged in unwanted sexual touching during his appeal and not enforcing the no-contact order; giving him extensions to appeal; refusing to cancel his appointment as mid-year graduation speaker while working with him and his attorneys to "kill" the article about the assault; promptly investigating his retaliation complaint against Ms. Burns while denying her the chance to cross-complain against him for the same claim; scheduling the retaliation hearing during summer break so she could not testify in person and failing to provide her with information necessary to defend herself; regularly omitting her outside legal counsel from communication about his claim; failing to consider her request for summary disposition of the retaliation claim for several months; seeking to conduct a review of the panel's decision on the retaliation claim before its publication contrary to Brown's policy.

7

retaliating against him.  Brown determined that her conduct in identifying Mr. Doe, stating that he was found responsible for the assault without noting that he had appealed that decision, concealing her involvement with the article, and falsely stating that the information came from a source at Brown when she provided all of the information was done in direct response to Mr. Doe being allowed to remain on campus and speak at his graduation.  Her decision to speak anonymously with *The Tab* reporter and provide false and incomplete information about Mr. Doe does not connect to her decision to file her original complaint in 2017 against Mr. Doe.  The continuing violations doctrine does not apply here, and the Court continues to find that the only independently actionable conduct in Ms. Burns' case is Brown's decision to reprimand her on August 6, 2018.

### B.   Analysis of Claims

"This Court is not a super-appeals court for sexual misconduct cases." *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016).  It will not "second-guess[] the disciplinary decisions made by school administrators[,]" *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999), but will review Brown's conduct to determine whether its decision to discipline Ms. Burns was retaliatory and whether she suffered an intentional infliction of emotional distress.  Brown argues in its motion that there are no material issues of disputed fact on either claim such that this Court should decide in its favor as a matter of law.  Ms. Burns argues that there are many material disputes in this case that are better suited to a jury's determination.  The law the Court is to apply here is generally not in dispute.

1. Retaliation

The Court must consider whether Brown's decision to reprimand Ms. Burns "constitute[d] intentional discrimination on the basis of sex in violation of Title IX." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005). The burden-shifting paradigm from *McDonnell Douglas Corporation v. Green* guides the Court's analysis here. 411 U.S. 792 (1973). First, if Ms. Burns can make a prima facie case for gender-based retaliation, then Brown has to give a legitimate, non-retaliatory reason for its decision to reprimand her. *Id.* at 802. If Brown meets that burden, Ms. Burns must show that Brown's reason is pretextual and the real reason it reprimanded her was to retaliate against her. *Id.* at 804. Pretext may be shown based on "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions,'" or where the reason is simply "'unworthy of credence.'" *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

a. Prima Facie Case

"[A] plaintiff may establish a prima facie case for a Title IX retaliation claim by alleging facts sufficient to show that she engaged in activity protected by Title IX, that the alleged retaliator knew of the protected activity, that the alleged retaliator subsequently undertook some action disadvantageous to the actor, and that a retaliatory motive played a substantial part in prompting the adverse action." *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002). Because Brown appears to concede that the first two elements are met here, the Court will focus on

the reprimand as adverse action and whether Ms. Burns' protected activity was the but-for cause of the reprimand.

Ms. Burns claims that the reprimand was a materially adverse action. The First Circuit has found that a reprimand *may* constitute an adverse action, *see Billings v. Town of Grafton*, 515 F.3d 39, 54–55 (1st Cir. 2008), but has also held that a reprimand is not a *material* adverse action when it does not carry with it "any tangible consequences." *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 73 (1st Cir. 2011). So, the Court reviews the circumstances underlying the reprimand.

As Brown acknowledges in its motion, Ms. Burns had every right to speak out about her life experiences;[3] she was found responsible for violating Brown's policy because the hearing panel determined that the way she sought to target Mr. Doe using incomplete information and concealing her participation in *The Tab* article was for the purpose of retaliating against him. The hearing panel issued a reprimand as punishment. Ms. Burns could have appealed the hearing panel's decision to reprimand her based on several grounds including procedural error, the existence of new evidence, and that the decision to reprimand her was contrary to the evidence but chose not to do so. ECF No. 28 at 36, ¶¶ 173-75.

---

[3] Ms. Burns argues that Brown's acts were retaliatory because it essentially punished her for speaking out about her sexual assault, citing 2020 United States Department of Education regulations that allow both sides to the complaint "to discuss the allegations under investigation as long as the discussion is neither tortious nor retaliatory." *Victim Rts. Law Ctr. v. Cardona*, 552 F. Supp. 3d 104, 120 (D. Mass. 2021). Brown argues that these regulations do not apply here because they predate this case. Further, even if they did apply, the hearing panel determined that Ms. Burns' conduct was retaliatory, which is not allowed in the 2020 regulations.

10

But, even as the punishment stood, it was only noted in the hearing panel's decision. It was not included on Ms. Burns' transcript or any other permanent record. Her status or access to educational opportunities were never altered. The Court does not find that Ms. Burns suffered any tangible consequences resulting from the reprimand, so it was not a materially adverse action. Ms. Burns does not believe that her decision to speak out about her sexual assault deserved a reprimand "but a criticism that carries with it no consequences is not materially adverse and therefore not actionable." *Bhatti*, 659 F.3d at 73. Because she cannot meet the third element of the prima facie case for retaliation, her claim fails as a matter of law. The Court grants Brown's Motion for Summary Judgment on Count I.

### 2. Intentional Infliction of Emotional Distress

"To create liability for intentional infliction of emotional distress in Rhode Island, '(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe.'" *Doe v. Brown Univ.*, 43 F.4th 195, 209 (1st Cir. 2022) (quoting *Swerdlick v. Koch*, 721 A.2d 849, 862 (R.I. 1998)). To find liability, Brown's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman v. Davenport-Metcalf*, 851 A.2d 1083, 1090 (R.I. 2004) (quoting Restatement (Second) Torts § 46 (1965)). A plaintiff must also show some "physical symptomatology

11

resulting from the alleged improper conduct." *Vallinoto v. DiSandro*, 688 A.2d 830, 838 (R.I. 1997) (citing *Reilly v. United States*, 547 A.2d 894, 898 (R.I. 1988)).

Ms. Burns believes that Brown's conduct was extreme and outrageous toward her relying in part on events that are time-barred. She argues that Brown favored Mr. Doe throughout these claims, and after Mr. Doe filed his complaint against her for retaliation, it refused to let Ms. Burns file a cross-claim against Mr. Doe for retaliation, and that the hearing process on Mr. Doe's complaint was flawed, resulting in the decision that she was responsible for retaliation. Some of these incidences are time-barred but the Court finds that there is no evidence that Brown, by responding to Mr. Doe's complaint and ultimately reprimanding her, acted in an intentional or reckless manner with the purpose of inflicting emotional distress on Ms. Burns. Mr. Doe filed a complaint against her for retaliation.

The Court finds that the way Brown chose to handle Mr. Doe's retaliation complaint in the face of undisputed evidence the Ms. Burns' conduct was retaliatory in accordance with Brown's Title IX Policy, was not intentional or in reckless disregard of causing her emotional distress. Brown followed its policies and procedures, went through its investigation process, interviewed many witnesses and collected documents, as it had done when Ms. Burns filed her initial complaint against Mr. Doe. The hearing panel concluded that Ms. Burns violated Brown's Title IX Policy and issued a measured punishment that essentially had no effect on her access to educational opportunities at Brown or to her future employment as there was no permanent record of the reprimand. ECF No. 28 at 32, ¶¶ 167-172.

Moreover, there is no evidence that Ms. Burns had an "enhanced susceptibility to emotional distress" or that Brown knew of it then and chose to act in a way that was outrageous and beyond the bounds of decency. *Doe v. Brown Univ.*, 43 F.4th at 210 (the court considered the parties' relationship and determined that a jury could find that Brown's attempt to coerce Doe into withdrawing by piling on charges against him while he was vulnerable and stressed "went beyond all bounds of decency."). Although Ms. Burns raises some hiccups on her path to graduation and a successful career, Brown points out that she was an accomplished student and is an incredibly successful person. The Court grants summary judgment to Brown on Ms. Burns' IIED claim.

## IV. CONCLUSION

There are no disputed issues of material fact on Ms. Burns' Title IX retaliation or state law IIED claims. As a matter of law, the Court GRANTS Brown's Motion for Summary Judgment. ECF No. 26.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

July 25, 2025

13